# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD S. KAPLAN**, | )<br>) |
| Plaintiff, | )<br>)<br>)<br>) |
| v. | ) CIVIL ACTION NO. 12-1097<br>) |
| **MICHAEL W. KIRK, HENRY W. TUENNERMAN** and **BARBARA JOAN TUENNERMAN** *husband and wife* and **HENRY W. TUENNERMAN** *trading and doing business as* TLJ LIMITED, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

**Conti, District Judge.**

Pending before the court is a motion to dismiss the third amended complaint (ECF No. 58) and brief in support (ECF No. 59) filed by defendants Henry W. Tuennerman ("Tuennerman"), Barbara Joan Tuennerman ("Barbara Tuennerman") and Henry Tuennerman doing business as TLJ Limited ("TLJ") (collectively "defendants"). Plaintiff Richard Kaplan ("plaintiff") filed a response (ECF No. 60) and brief in opposition (ECF No. 61) to defendants' motion. The court dismissed defendant Michael W. Kirk ("Kirk") from the case at a motion to dismiss hearing held on February 25, 2013. At that hearing, the court dismissed plaintiff's first amended complaint (ECF No. 10) without prejudice and granted plaintiff leave to file a second amended complaint. (ECF No. 36.) The second amended complaint was dismissed at a hearing on May 29, 2013, and the plaintiff was granted leave to file a third amended complaint. The third amended complaint (ECF No. 50), which is the subject of the present motion, asserts one claim against all remaining defendants alleging a violation of the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA"), 12 PA. CONS. STAT. § 5101 et seq. The court held a hearing on

defendants' motion to dismiss on August 8, 2013, at which time the court heard argument from the parties and gave its preliminary assessment. The matter being fully briefed, it is now ripe for disposition. Defendants' motion to dismiss will be GRANTED, and the third amended complaint will be dismissed with prejudice because plaintiff fails to adequately plead that he retains a "claim" against his ex-wife Laura A. Tuennerman-Kaplan ("Laura") as defined in the UFTA.

I.      **Factual Allegations in the Third Amended Complaint**

Plaintiff resides in Monroeville, Pennsylvania. (ECF No. 50 ¶ 1.) Laura, plaintiff's ex-wife, who is not a party to the suit, resides in Fayette County, Pennsylvania. (Id. ¶ 2.) Tuennerman and Barbara Tuennerman are Ohio residents who reside in Wayne County, Ohio. (Id. ¶ 3.) TLJ is an Ohio limited partnership with its principal place of business in Wayne County, Ohio. (Id. ¶ 4.) Tuennerman is Laura's father. (Id. ¶ 9.) Plaintiff alleges that Tuennerman formed TLJ on or about July 31, 1990, and that it operated pursuant to an Agreement of Limited Partnership dated July 31, 1990. (Id. ¶¶ 6-7.) Tuennerman allegedly owned a 50% interest in TLJ as the general partner, and Laura owned a 25% interest in TLJ as a limited partner. (Id. ¶¶ 8-9.)

Plaintiff and Laura's marriage broke down on or about June 13, 2008, at which time plaintiff initiated dissolution proceedings in the Court of Common Pleas of Fayette County, Pennsylvania, at docket no. GD-2008-1927. (Id. ¶ 17.) During the dissolution proceedings, Laura's assets were to be fully disclosed in connection with the equitable distribution of all marital property. (Id. ¶ 18.) Plaintiff alleges that as a result of the dissolution proceedings, plaintiff and Laura entered into and remain in a "creditor-debtor type relationship and, as a result, [plaintiff] was also a creditor of [TLJ]." (Id. ¶ 19.) Plaintiff and Laura entered into a

2

marital settlement agreement on March 16, 2012.[1] (Id. ¶ 20.) Plaintiff alleges that he believed all of Laura's income and assets were accounted for, including Laura's interest in TLJ—specifically, plaintiff believed that TLJ's assets included only two parcels of real property valued at $1.4 million, with Laura's share being valued at approximately $350,000. (Id. ¶¶ 20-21.) Plaintiff alleges that TLJ actually owned significantly more valuable assets, which he maintains were conveyed to the Tuennermans for little or no consideration during the dissolution proceedings. (Id. ¶¶ 20-30.)

Plaintiff alleges he sought discovery from Kirk and Tuennerman during the divorce proceedings with respect to TLJ, but was prevented from doing so by the Fayette County court and a court in Ohio, which prohibited certain depositions and discovery from taking place. (Id. ¶ 11.) Plaintiff alleges that he remained suspicious that additional assets might exist, but he wished to settle the divorce while remaining able to pursue rights in TLJ "to which he was deprived." (Id. ¶ 12.) Plaintiff alleges that he preserved his right to pursue Kirk, Tuennerman, and any other third parties for depriving him of his share of TLJ assets. (Id. ¶ 13.) A provision to that effect was included in the settlement agreement. (Id. ¶ 14.)

Plaintiff alleges that after the settlement agreement was executed, he learned about significant additional assets belonging to TLJ which were not disclosed during the dissolution proceedings. (Id. ¶¶ 20-21.) Based upon this information, plaintiff alleges defendants engaged in a series of fraudulent transactions involving TLJ's income and assets for the purpose of defrauding plaintiff and eliminating Laura's financial risk during the dissolution. (Id. ¶ 23.) Plaintiff specifically alleges that the Tuennermans received two properties, one in Wayne

---

[1] Defendants attached a copy of the marital settlement agreement to their motion to dismiss. (ECF No. 39-1.) The court may properly consider the settlement agreement as part of the motion to dismiss because it is an undisputedly authentic document that is "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

3

County, Ohio, and one in Fayette County, Pennsylvania, for $1.00 each, after the dissolution proceedings began. (Id. ¶¶ 23-27.) Plaintiff also alleges that Tuennerman committed several violations of the TLJ partnership agreement, particularly with respect to the dissolution of the partnership and destroying or failing to maintain tax returns for the partnership. (Id. ¶¶ 29-31.)

As a result of the conduct outlined above, plaintiff alleges that he is a "creditor" pursuant to the UFTA, that Laura is a "debtor" under the UFTA, and that Tuennerman's acts were a "transfer" under the UFTA. (Id. ¶¶ 34-36.) Plaintiff also alleges that the transfer of property from TLJ to Tuennerman was "fraudulent" under the UFTA because it was made to defeat plaintiff's "claim" to Laura's share of TLJ. (Id. ¶¶ 37-42.)

## II. Motion to Dismiss Standard

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing 490 F.3d at 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]- that the pleader is entitled to relief.'" Id. (quoting Fed. Rule Civ. Proc. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

### III. Discussion

Defendants make three arguments in support of their motion: first, the UFTA claim fails because the alleged "debtor," i.e., Laura, did not have the authority to "transfer" assets from TLJ; second, because plaintiff released all claims against Laura pursuant to the marital settlement agreement, he can no longer maintain an action pursuant to the UFTA; and third, plaintiff fails to plead adequately that Laura acted with the requisite "actual intent to hinder delay and defraud" plaintiff. Because the court concludes that plaintiff waived all claims against Laura as part of the marital settlement agreement, the court finds plaintiff cannot bring a claim pursuant to the UFTA as a matter of law and the court will not address defendants' alternative bases for dismissal.

### A. Defined Terms in the UFTA

The relevant portion of the UFTA provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor . . .

12 PA. CONS. STAT. § 5104(a). The terms used in section 5104 have definitions specific to the UFTA. A "transfer" is defined as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. The term includes payment of money, release, lease and creation of a lien or other encumbrance." 12 PA. CONS. STAT. § 5101(b). A "creditor" is "a person who has a claim" and a "debtor" is "a person who is liable on a claim." Id. A "claim" is broadly defined as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Id.

6

To bring an action under the UFTA, several elements must be shown: (1) a creditor; (2) a debtor; (3) a claim; (4) a transfer; and (5) a transferee. 12 PA. CONS. STAT. § 5104(a). The third amended complaint attempts to allege that the present case involves all five of the above elements, but fails to account for the important relationships between those elements that must be met to bring an action under the UFTA. The third amended complaint specifically identifies Laura as being a "debtor" to plaintiff, (ECF No. 50 ¶ 19), without regard to the fact plaintiff completely released Laura from, among other things, claims he had against Laura relating to the marital value of TLJ or her disclosure of financial information regarding TLJ. (ECF No. 50-2 at 11-12.) In order to succeed on a UFTA claim, however, plaintiff must have a valid "claim," as defined in the UFTA, against Laura as a "debtor." See 12 PA. CONS. STAT. § 5101(b) (defining "Debtor" as "[a] person who is liable on a claim"). As discussed below, plaintiff cannot arbitrarily identify Laura as the "debtor" for UFTA purposes, while at the same time conceding that he fully released any claim against her pursuant to the marital settlement agreement.

B. **Marriage Settlement Agreement Release**

Defendants argue that the marriage settlement agreement between plaintiff and Laura effectively released plaintiff's purported "claim" against Laura, thereby eliminating any potential claim pursuant to the UFTA. Plaintiff does not appear to contest this argument, and instead maintains that he properly preserved his UFTA claim against Tuennerman, who is the defendant in the present case. The settlement agreement provides, in pertinent part:

> It is understood and agreed that the marital value of TLJ Limited and [Laura's] disclosure of financial information in regard to the same is disputed. Notwithstanding such disputes, the parties hereto agree that in entering into this Agreement they have compromised disputes and that neither the marital value of TLJ Limited [nor] [Laura's] disclosure of financial information concerning the same shall form the basis of any claim or cause of action at law or in equity by

7

> each party against the other, including but not limited to an attack on the validity
> of this Agreement; it being understood that this Agreement constitutes a complete
> and full release by each party against the other in regard to these disputes.

(ECF No. 50 at 11-12.) Defendants maintain that a claim pursuant to the UFTA will not stand where a creditor's underlying "claim" against the debtor has been discharged. This court in Cohen v. Sikirica, 487 B.R. 615, 628 (W.D. Pa. 2013), acknowledged that "'[i]t is surely true that where a creditor holds a claim that is satisfied in full, the creditor no longer has a cause of action to recover assets conveyed by the debtor to a transferee.'" Id. (citing Silverman v. Sound Around, Inc. (In re Allou Distribs. Inc.), 392 B.R. 24, 34 (Bankr. E.D.N.Y. 2008)). Unless the alleged creditor (plaintiff in this case) maintains an unsatisfied claim against the alleged debtor (Laura in this case), the creditor cannot maintain a cause of action pursuant to the UFTA. See id.

The third amended complaint attempts to allege that the parties to the marital settlement agreement intended to preserve plaintiff's right to pursue claims against third parties, including Tuennerman. Plaintiff maintains this is sufficient to preserve his cause of action pursuant to the UFTA. Plaintiff is forced to concede, however, that the language of the marital settlement agreement "protects the debtor." (ECF No. 61 at 17.) Based upon this concession, plaintiff fails to make out a cause of action under the UFTA because he has fully and completely released any "claim" he has against the alleged "debtor"—Laura. To the extent plaintiff argues that he still has a "claim" against Tuennerman, that claim is not sufficient under the UFTA because the "debtor" (Tuennerman) cannot be the transferee.[2] In that instance, no fraudulent transfer could take place because the debtor must be the transferor. Plaintiff's claim must fail as a matter of law.

C.     **Ambiguity of Terms**

---

[2] It is worth noting that this situation, which appears to be the basis for plaintiff's argument, is contradicted by the allegations in the third amended complaint, which still maintains that Laura is the "debtor." (ECF No. 50 ¶ 34.) Plaintiff cannot simply allege that Laura is a "debtor" for UFTA purposes, but concede that he released his claim against her in full.

The third amended complaint alleges that the terms of the marital settlement agreement are unambiguous and create a covenant not to sue that preserves plaintiff's claims against third parties. Even if the court agreed with plaintiff's premise—i.e. that certain terms of the marital settlement agreement addressing claims against third parties are unambiguous—the proposed result would not follow from that argument. A review of the language in the settlement agreement confirms that plaintiff "fully and completely" released any claim he may have had against Laura with respect to TLJ and financial disclosures relating to TLJ. Under Pennsylvania law, "'[a] contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends.'" Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995) (quoting Samuel Rappaport Family Partnership v. Meridian Bank, 657 A.2d 17, 21 (Pa. Super. Ct. 1995)). The plain language of the marital settlement agreement provides: "this Agreement constitutes a **complete and full release** by each party against the other in regard to these disputes. . . . Therefore, neither party shall be permitted to reopen this case **or make any claim to reopen this case** on the basis of . . . any issue whatsoever in their financial past." (ECF No. 50-2 at 12) (emphasis added). This language cannot be reasonably interpreted to be a covenant not to sue in favor of Laura; instead, it unequivocally indicates that plaintiff released all claims he may have had against Laura—including those against Laura relating to TLJ and the financial disclosures relating to TLJ. Without an underlying claim between himself as a creditor and Laura as the debtor, plaintiff cannot, as a matter of law, assert a cause of action under the UFTA, and the third amended complaint must be dismissed.

**D.     Futility of Amendment**

9

Plaintiff had four opportunities to set forth a plausible claim for relief in this case. A court may deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, AND ADAM N. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed.); see e.g. Denny v. Barber, 576 F.2d 465, 469-71 (2d Cir. 1978). The court acknowledges that, despite the possibility that there was collusion between Laura and Tuennerman during divorce proceedings, the facts of this case are not compatible with a cause of action under the UFTA, because plaintiff released all claims he may have had against Laura. Laura cannot be a "debtor" to plaintiff for purposes of the UFTA, and the court concludes that further amendment would be futile. Plaintiff cannot, as a matter of law, amend his pleadings to assert that he has a "claim" against Laura. An appropriate order follows.

## ORDER

AND NOW, this 6th day of August, 2013, upon consideration of the third amended complaint and attachments thereto (ECF No. 50) filed by plaintiff Richard F. Kaplan, the motion to dismiss (ECF No. 58) filed by defendants Henry W. Tuennerman, Barbara Joan Tuennerman, and Henry Tuennerman trading and doing business as TLJ Limited, the response in opposition (ECF No. 60) filed by plaintiff, and the arguments of the parties at the hearing on August 5, 2013, it is HEREBY ORDERED that defendants' motion to dismiss is GRANTED, and the third amended complaint is DISMISSED with prejudice, as set forth in the accompanying memorandum opinion.

The clerk of court shall mark the case CLOSED.

BY THE COURT:

<u>/s/Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge